**IT IS ORDERED as set forth below:**



**Date: December 6, 2018**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-53793-WLH |
| | ) | |
| ERIC MICHAEL STEWART, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| | ) | |
| GARY RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. PROC. NO. 17-5126 |
| | ) | |
| ERIC MICHAEL STEWART, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT**

This matter is before the Court on Plaintiff's Motion to Enforce Settlement Agreement ("Motion") [Docket No. 29]. The Court held a hearing on November 8, 2018 at which Jeffrey R. Nickerson appeared for the Plaintiff and Charles M. Clapp appeared for the Debtor who was also present. The only witness called was W. Douglas Jacobson, the Debtor's former counsel.

1

The Court has jurisdiction of this matter under 28 U.S.C. § 1334 and it is a core matter under 28 U.S.C. § 157(b)(2)(I) as it determines the dischargeability of the Debtor's debt to Plaintiff.

## FACTS

On May 17, 2017, Gary Ray ("Plaintiff") filed a complaint to determine the dischargeability of a judgment he obtained against the Debtor/Defendant Eric Michael Stewart ("Debtor"). The parties conducted discovery. On the eve of the due date for the Pretrial Order in this case, counsel for the parties thought they had reached a settlement. Plaintiff's counsel, Jeffrey R. Nickerson, and the Debtor's counsel, W. Douglas Jacobson, engaged in settlement negotiations on their clients' behalf.

The Motion outlines 24 email exchanges between Mr. Nickerson and Mr. Jacobson, and copies of the emails are attached to it. Neither Mr. Jacobson (the Debtor's former counsel) nor Mr. Clapp (the Debtor's present counsel) disputed any of the emails. The emails show that as early as June 2018 Mr. Jacobson was trying to get a response to a settlement offer previously made. Several emails are key here.

On August 1, 2018, Mr. Nickerson wrote, "My client has authorized me to offer settlement at $20,000, with a consent order requiring the payments ($600 down followed by $300 per month) with the right of Mr. Ray to proceed with collection of the full amount (less any payments received) if Mr. Stewart defaults, and a provision that the debt is not discharged in the bankruptcy." Mr. Jacobson responded on the same day that he would check with his client. On August 2, 2018, Mr. Jacobson responded with a counter offer to which Mr. Nickerson responded on August 6, 2018. Mr. Jacobson responded on August 6 to the latest offer, "Don't think that's doable, but I'll ask." Later that afternoon, Mr. Jacobson confirmed "he can't do it. $17,500 with $500 down and

2

$250/month is the best he can do. If he defaults, the entire debt will be nondischargeable and Mr. Ray will be able to pursue payment. …" The next day, Mr. Nickerson countered with $20,000, payable $500 down and $250 per month. On August 9, 2018, Mr. Jacobson emailed Mr. Nickerson saying, "I'm still trying to get an answer to your last offer." Mr. Jacobson emailed Mr. Nickerson again on August 10 stating, "My client accepts the settlement offer of $20,000, with $500 down and $250 per month thereafter. Upon default, Mr. Ray retains the right to collect the balance of the debt."

On August 14, 2018, Mr. Jacobson sent an email to the Judge's chambers, with a copy to Mr. Nickerson, stating the matter had been settled and the parties would upload a proposed consent order shortly. That same day, Mr. Jacobson (for the Debtor) sent a draft settlement agreement to Mr. Nickerson. On August 21, 2018, Mr. Nickerson sent an email to Mr. Jacobson stating he had some problems with the settlement agreement and did not think they could get it signed by the end of the week. Mr. Nickerson sent a revised settlement agreement to Mr. Jacobson with "track changes" and stated he was "sending them to my client for review and consideration". He pointed out the change needed to the agreement to provide that in the event of default, the full amount of the debt (i.e., the judgment) would come due and not just the $20,000 reduced amount agreed upon. Only an hour and 10 minutes later, Mr. Jacobson (for the Debtor) responded, "You're correct. All changes are accepted. Do you think an extension on the PTO until 9/14 will give us enough time to get this signed and uploaded". The next day, Mr. Nickerson responded, "Am forwarding the revised document to my client. Hopefully we can get everything executed by 9/14". Nothing then transpired on either side until September 11, 2018, when Mr. Jacobson told Mr. Nickerson he was withdrawing as counsel for the Debtor. On October 1, 2018, Mr. Nickerson sent to Mr. Jacobson a signed settlement agreement with a handwritten date of "24" of August, and this

3

Motion followed. No evidence was presented as to when the settlement agreement was actually signed.

The Debtor did not testify and did not dispute the series of events set out above or that Mr. Jacobson had the authority to negotiate as he did. Rather, the Debtor took the position that a writing was a required part of the transaction and until the agreement was signed, it was not final or binding.

## LAW

"The construction of settlement contracts is governed by the state law applicable to contracts in general … Here, Georgia law governs both whether there was a settlement agreement and the construction of any alleged settlement agreement". Hopson v. Hopson (In re Hopson), 216 B.R. 297, 301 (Bankr. N.D. Ga. 1997) (cites omitted). See also Hayes v. National Svc. Ind., 196 F.3d 1252, 1254 (11th Cir. 1999); Glazer v. J.C. Bradford & Co., 616 F.2d 167, 169 (5th Cir. 1980). For an agreement to be binding, "it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned". Thomas v. Phillips, 240 Ga. App. 600, 602 (1999); Providers Benefit Life Ins. Co. v. Tidewater Group Inc. (In re Tidewater Group, Inc.), 8 B.R. 930, 931 (Bankr. N.D. Ga 1981). Moreover, the agreement must be "definite, certain and unambiguous". Hopson, 216 B.R. at 297.

In this case, the agreement between Mr. Nickerson and Mr. Jacobson was definite, certain and unambiguous. They agreed on the amount to be paid and a payment plan. They agreed on the repercussions of a default, and the consent order to be entered in the adversary proceeding. No evidence was submitted to the Court to show that anyone disputed the terms agreed upon by the two attorneys.

4

The Debtor argues, however, that the agreement was not final until written and signed by the parties. A writing could be required under three circumstances. First, "[i]f the existence or terms of a settlement agreement are disputed, then the agreement must be in writing." Hopson, 216 B.R. at 301. Second, if the contract is one identified in the statute of frauds, it must be in writing. O.C.G.A. § 13-5-30. Third, if the parties have conditioned the agreement on preparation of a writing, then a writing is necessary to finalize the agreement. Vernon v. Assurance Forensic Acctng., LLC, 333 Ga. App. 377, 384-85 (2015). If a writing is required, "letters or documents prepared by attorneys which memorialize the terms of the agreement will suffice". Hopson, 216 B.R. at 301.

Under Georgia law, "Attorneys have authority to bind their clients in any action or proceeding by any agreement in relation to the cause, made in writing …". O.C.G.A. § 15-19-5. The writing requirement, however, is only necessary if there is a dispute as to the existence and terms of the agreement. If the dispute is over the attorneys' authority, no writing is required. Brumbelow v. Northern Propane Gas Co., 251 Ga. 674, 676 (1983).

> Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. … This authority is determined by the contract between the attorney and the client, and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties … unless it is limited by the client and that limitation is communicated to opposing parties.

Brumbelow, 251 Ga. at 674-75 (cites omitted); Hayes, 196 F.3d at 1254; Glazer, 616 F.2d at 168; Cannady, 2006 WL 3422424 at *7-*8; Clark v. City of Zebulon, 156 F.R.D. 684, 692 (N.D. Ga. 1993); Tidewater, 8 B.R. at 932.

In this case, the existence and terms of the agreement between the two attorneys is not disputed. The email exchanges evidence all the essential terms. Mr. Jacobson prepared the

5

settlement agreement which Mr. Nickerson and the Plaintiff signed.  See Cannady v. ADP, 2006 WL 3422424, *7 (N.D. Ga. Nov. 28, 2006).  Mr. Jacobson notified the Court of the settlement with a copy to Mr. Nickerson who did not object, further evidencing their understanding of the settlement.

The email exchange further reflects that both attorneys negotiated in good faith based on their understanding of their clients' positions.  For example, on August 1, 2018, Mr. Nickerson wrote, "My client has authorized me to offer …", to which Mr. Jacobson responded he would check with his client.  On August 7, 2018, Mr. Nickerson made another offer to which Mr. Jacobson responded, "I don't think that's doable but I'll ask".  On August 9, 2018, Mr. Jacobson wrote, "My client accepts".  Nothing in the attorneys' dealings indicated in any way that the clients were not involved.  On the contrary, the communications indicate both attorneys were in contact with their clients and acting within their authority.  Under the circumstances here, the attorneys had authority to settle the litigation under O.C.G.A. § 15-19-5 and to bind their clients to the settlement.  Any requirement of a writing under O.C.G.A. § 15-19-5 is satisfied by the email exchanges and the proposed settlement agreement prepared by one party and signed by the other,

A written contract is required in some instances under the statute of frauds.  Among the contracts required to be in writing is, "Any agreement that is not to be performed within one year from the making thereof".  O.C.G.A.§ 13-5-30(5).  The courts have construed this provision to require contracts to be in writing only if it is not possible for performance to occur within the year.  "[A] contract must be incapable of being performed within a year; the possibility of performance of the contract within one year is sufficient to remove it from the statute of frauds." Vernon, 333 Ga. App. at 386 (emphasis in original).  For example, in Mills v. Barton, 205 Ga. App. 413 (1992), the debtor was to repay a loan when she was financially able.  The court found it was conceivable

6

the loan could be repaid in a year so the statute of frauds did not apply. Where an agreement provides for a repayment period of longer than a year, but no penalty for prepayment exists, the courts are split on whether the statute of frauds applies. Compare Kennedy v. Hyde, 666 S.W.2d 325, 328 (Tx. App. 1984) reversed on other grounds, 682 S.W.2d 525 (Tx. App. 1984) (ten-year obligation under settlement agreement could have been prepaid at any time so capable of being performed within a year) to Vess Beverages, Inc. v. Paddington Corp., 886 F.2d 208 (8th Cir. 1989) ("Where the agreement is definitive as to the obligation and the length of time the obligation is to run, we will not ignore the agreement's clear violation of the statute of frauds." Id. at 212).

Here, the settlement agreement called for $20,000 to be paid with $500 down and $250 per month until paid in full. This arrangement would take well over a year. Based on the email exchange between the attorneys, the Debtor did not believe he could pay this amount within a shorter period of time, suggesting it is unlikely the contract could be performed within a year.

If the statute of frauds requires a contract to be in writing, it must be signed by the party charged (here, the Debtor and the Plaintiff) or by some person lawfully authorized. Georgia generally applies the "equal dignity rule" which holds that "the authority of an agent to execute an agreement required by the statute of frauds to be in writing must also be in writing". Lee v. Green Land Company, Inc., 245 Ga. App. 558, 560 (2000); Turnipseed v. Jaje, 267 Ga. 320, 322 (1996). But the Georgia courts have held that compliance with O.C.G.A. § 15-19-5 "serve(s) the same purpose as the statute of frauds by addressing the question of the existence of an agreement or its terms even though that Code section does not require the signature of the party to be charged. … [L]etters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice." Capitol Materials Inc. v. Kellogg & Kimsey, Inc., 242 Ga. App. 584, 587 (2000); Johnson v. DeKalb County, 314 Ga. App. 790, 795 (2012). Therefore, even if the

7

settlement agreement at issue in this case was not to be performed within a year and required to be in writing, the writing requirement was satisfied by the email exchanges and settlement agreement exchanges between Mr. Nickerson and Mr. Jacobson.

The Debtor's response to the Motion is that the parties contemplated a writing, and until that writing was executed, the agreement was not final. The Debtor relies on the case of Omni Bldrs. Risk, Inc. v. Bennett, 313 Ga. App. 358 (2011). There, in an employee's action for breach of a mediation agreement, the Court of Appeals reversed the grant of summary judgement to the employee, concluding there was no enforceable settlement agreement. The court recited the same law cited above about an attorney's authority to bind his client. The opinion notes that a settlement agreement was prepared at the mediation with blanks for the signatures of the parties and their attorneys. But the circumstances of the negotiation there differ from the facts of the present case. In Omni, the parties "preliminarily" agreed to a dollar amount and the court viewed the settlement memorandum prepared by the mediator as in the nature of a proposal. Moreover, the parties were physically present at the mediation so the question was not one of apparent authority of the attorney. It was a question of whether the party present had agreed. Importantly, the mediation agreement signed by the parties at the start of the mediation provided for signatures of all attendees on any settlement. Certainly, parties can agree that a precondition to settlement is execution of a separate settlement agreement, but the mere fact they contemplate a separate written agreement is not conclusive. "When the parties intend to memorialize with a formal document an agreement that they have already reached, … the execution of the document is not an act necessary to the creation of an enforceable contract." Doss & Assoc. v. First American Title Ins. Co. 325 Ga. App. 448, 452 (2013); Vernon, 333 Ga. App. at 385 (2015); Greene v. Colonial Stores Inc., 144 Ga. App. 645 (1978).

8

In this case, the Court finds that execution of a settlement agreement was not a precondition of the agreement being final. While the parties contemplated a written agreement, execution of the agreement was not necessary. The exchange of emails and exchange of the proposed written agreement demonstrate a complete meeting of the minds as to the agreement. Mr. Jacobson used words such as "accepted" with respect to the terms set out in the emails and the written agreement. Execution of the settlement agreement was only intended to be a memorialization of that agreement.

## CONCLUSION

The email exchange between Mr. Nickerson and Mr. Jacobson substantiate that an agreement to settle this adversary proceeding was reached. The attorneys had the authority, as between each other, to settle the matter. As the court in Capitol Materials stated, "In our view, this is a case where an agreement as to terms was clearly made and then someone changed his mind and no longer wanted to settle the case." 242 Ga. App. at 587. Plaintiff's Motion to Enforce Settlement Agreement is granted. The Court will enter an order in the adversary proceeding consistent with the proposed order the parties negotiated.

### ### END OF DOCUMENT ###

**DISTRIBUTION LIST**

Jeffrey R. Nickerson
Howe & Associates
4385 Kimball Bridge Road, Suite 100
Alpharetta, GA 30022

W. Douglas Jacobson
Law Offices of Douglas Jacobson, LLC
107 Colony Park Drive, Suite 100
Cumming, GA 30040

Charles M. Clapp
Law Offices of Charles Clapp, LLC
5 Concourse Parkway NE, Suite 3000
Atlanta, GA 30328